UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE DILLARD,

                Plaintiff,

                                       Case No. 12-cv-13813
vs.                                 HON. GERSHWIN A. DRAIN

GENERAL ACID PROOFING, INC.,
*et al.*,

                Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART GENERAL ACID'S AND BALL CORPORATION'S MOTION FOR SUMMARY JUDGMENT [#20], GRANTING PRINCE RESORTS'S MOTION TO DISMISS [#22], DENYING GENERAL ACID'S AND BALL CORPORATION'S MOTION FOR SANCTIONS [#27] AND CANCELLING APRIL 16, 2013 AND MAY 15, 2013 HEARINGS

## I.    INTRODUCTION

On August 28, 2012, Plaintiff, Maurice Dillard, filed the instant action alleging that his former employer, Defendant General Acid Proofing ("General Acid"), wrongfully discriminated against him by terminating his employment based on his race in violation of 42 U.S.C. § 1981. Plaintiff also brings negligence claims against General Acid and Defendants, Ball Corporation and Prince Resorts Hawaii Inc. ("Prince Resorts").

Presently before the Court is General Acid's and Ball Corporation's Motion for Summary Judgment, filed on January 22, 2013. Also before the Court is Prince Resorts's Motion to Dismiss for Lack of Personal Jurisdiction, filed on February 5, 2013. These matters are fully briefed and the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the

-1-

court will resolve the pending motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Court grants in part and denies in part General Acid's and Ball Corporation's Motion for Summary Judgment and grants Prince Resorts Motion to Dismiss. Furthermore, because the Court concludes that genuine issues of fact remain as to Plaintiff's asserted claims, General Acid's and Ball Corporation's Motion for Rule 11 Sanctions, filed on March 27, 2013, is without merit. Accordingly, the Court denies General Acid's and Ball Corporation's Motion for Rule 11 Sanctions.

## II.    FACTUAL BACKGROUND

Plaintiff was hired by General Acid on October 26, 2004. At that time, Plaintiff was still an apprentice with the cement masons. Plaintiff was later appointed to a journeyman position qualifying him to work with harmful chemicals. During his tenure with General Acid, Plaintiff was the only African American employee. He alleges that he was subject to racist jokes and was asked about the food he ate and about his hair.

During the week commencing April 16, 2012, General Acid started a project at Ball Metal Beverage Container Corporation's facility in Kapolei, Hawaii. General Acid was retained to resurface the concrete foundation and install Cellicote Coroline 505, to protect the concrete from being etched by acid used in the manufacturing process. During his stay in Hawaii, Plaintiff, along with other General Acid employees, stayed at Prince Resorts in Waikiki, Hawaii.

On Sunday evening, April 15, 2012, Plaintiff and another employee, Steve Gagnon, drank alcohol in Plaintiff's room.[1] Plaintiff drank six beers and Gagnon drank eleven beers. The empty

---

[1] In his Response in Opposition, Plaintiff argues that he and Gagnon drank alcohol in Plaintiff's room on Monday night, April 16, 2012. However, Plaintiff testified that he and Gagnon drank in his room the previous evening, on April 15, 2012.

beer bottles and cans were stacked neatly by the garbage basket.

Plaintiff worked a twelve hour shift on Monday, April 16, 2012. Plaintiff also worked the entire twelve hour shift on Tuesday, April 17, 2012. During both days, Plaintiff was required to wear a work uniform that was made from TYVEK material and the temperature inside the plant reached somewhere between 80 and 90 degrees. While on break during his shift on Tuesday, Plaintiff began to feel cramps and stayed in the break room while the other employees returned to the plant floor to resume their work. Plaintiff believed he was dehydrated because he had experienced dehydration and its symptoms while working on another job for General Acid. One of Ball Corporation's maintenance workers noticed that Plaintiff was cramping and provided him with a five gallon drum of Gatorade. Plaintiff claims that when he returned to the floor, Nick Mavron, the foreman on the Hawaii assignment, noticed that Plaintiff did not appear well and pulled Plaintiff from the job he was doing and put him on cleanup detail, a less difficult job.

On Wednesday, April 18, 2012, Plaintiff failed to appear at the start of his shift. James Crimmins, Plaintiff's manager, contacted Prince Resorts's representatives to determine the reason Plaintiff did not appear for his scheduled shift. Prince Resorts's representatives informed Crimmins that its security staff entered Plaintiff's hotel room around 4:15 a.m. that morning when Plaintiff failed to respond to wake up calls. The security staff heard water running when they approached Plaintiff's room. When Plaintiff failed to come to the door, the security staff became concerned and broke the secondary lock gaining access to Plaintiff's room. An investigation revealed that:

> Upon entering the room, [staff] discovered numerous amounts of empty alcohol containers and over the counter medication. [Staff] attempted to wake hotel guest Maurice Dillard, who was still asleep on the bed. Dillard responded by looking at [the staff], then turned over and continued to sleep.

*See* General Acid's Mot. for Summ. J., Ex. A.

-3-

Around 7:45 a.m., Crimmins, escorted by Prince Resorts's security staff, entered Plaintiff's room. Crimmins found Plaintiff lying on the bed and claims that the room was trashed. *See* General Acid's Mot. for Summ. J., Ex. C. He noted that the furniture was disrupted, an empty case of beer was on the floor and cigarette butts were all over the room, and some had been put out on the carpeting. *Id*. When Crimmins pulled the blanket off of Plaintiff, Plaintiff grabbed it back, covered himself up again and went back to sleep. *Id*. The security staff advised Crimmins that Plaintiff had acted similarly that morning. *Id*. Crimmins checked on Plaintiff four to five more times throughout the morning, and each time, Plaintiff behaved in the same way. The third time that Crimmins checked on Plaintiff, he noticed that Plaintiff had gotten out of bed since the last time he had been in the room and had defecated in the bath tub and gone back to bed. Mavron's wife, Renee Mavron, came with Crimmins to check the room during this visit. In describing the condition of the room during her deposition, Mrs. Mavron stated:

> A.    The room was a mess. There were beer cans and –all over. There was medicine bottles, too, on the dressers. There were cigarette butts all over the floor that I remember seeing. There was – he had defecated in the tub. The room smelled awful, even with the windows wide open. That's about all I can recall.
> Q.    Did it appear that he was intoxicated from drinking the beer?
> A.    I think so. He did seem intoxicated. I think that was the reason we couldn't stir him to get up, and he just wanted to sleep it off.

Mrs. Mavron, who is a medical assistant, also checked Plaintiff's pulse and determined that it was in the normal range.

When Shane Wiedyke, General Manager for General Acid, learned of these events, he contacted Plaintiff and advised him that an airplane ticket had been left for him at the hotel's front desk and directed him to return to Michigan. The next day Mavron drove Plaintiff to the airport. Mavron asked Plaintiff if he wanted any medical treatment, and Plaintiff declined.

-4-

Immediately upon his return to Michigan on Friday, April 20, 2012, Plaintiff went to Sinai Grace Hospital, where he was treated for acute dehydration and a swollen jaw.  Plaintiff was given two bolus of saline and penicillin.  On April 23, 2012, Wiedyke terminated Plaintiff's employment purportedly based on Plaintiff's conduct in Hawaii.  On April 25, 2012, Plaintiff went to General Acid's facility to pick up his paycheck.  Plaintiff informed Wiedyke that he did not know what had happened to him in Hawaii and that he had not been drinking on Tuesday evening.  Wiedyke told Plaintiff to bring him some medical documentation and that they could discuss the possibility of Plaintiff returning to work for General Acid.

## III.   LAW & ANALYSIS

### A.   General Acid's Motion for Summary Judgment

#### 1.   Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## 2. 42 U.S.C. § 1981

42 U.S.C. § 1981 prohibits race discrimination in the formation of the employment relationship, as well as in "post-formation employment actions as well." *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506 (6th Cir. 2003). Specifically, § 1981 states:

§ 1981.      Equal rights under the law

(a)      Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be the subject to like punishment,

-6-

pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)   "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

(c)    Protection against impairment.  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  Courts use the same burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze claims under § 1981.  *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000); *Chambers v. City of Detroit*, 786 F. Supp.2d 1253, 1263 (E.D. Mich. 2011).

A plaintiff utilizing the *McDonnell Douglas* burden-shifting analysis establishes a prima facie case of discrimination by showing: (1) that he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) he was treated differently from similarly situated employees from a non-protected class or replaced by a person not a member of his protected class.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981).        If plaintiff proves a prima facie case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision.  *McDonnell Douglas*, 411 U.S. at 802.  Even though the burden of going forward is on the defendant once a plaintiff has established a prima facie case, the ultimate burden of persuasion never shifts from the plaintiff. *Id.*  Once the employer carries this burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination.  *Id.*  The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action.

-7-

*Wheeler v. McKinley Enters.*, 937 F. 2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always, remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

General Acid argues that Plaintiff cannot set forth a prima facie case of discrimination because he cannot demonstrate that he was qualified for his job nor that he was treated less favorably than similarly situated individuals. Plaintiff counters that General Acid's Motion for Summary Judgment is premature because discovery cutoff is not until June 11, 2013. General Acid responds that it has completed all of its discovery and the only discovery Plaintiff has requested, specifically a request for production of documents, has been completely answered. Plaintiff refutes this contention, arguing that General Acid has failed to provide a list of employees by race, the name and race of the employee who replaced Plaintiff or any disciplinary issues with employees similar to Plaintiff.

The Court finds that summary judgment is inappropriate because questions of fact exist and discovery has not yet been completed. The Court cannot conclude as a matter of law that Plaintiff has failed to set forth a prima facie case of discrimination. Plaintiff worked in his position for eight years and was promoted to journeyman in 2006. Defendant argues that Plaintiff cannot establish he was qualified for his position due to his failure to appear for his shift on Wednesday, April 18, 2012, however material questions remain as to whether Plaintiff failed to appear because he was intoxicated or whether he failed to appear because he was suffering from acute dehydration and its symptoms. Plaintiff denies drinking alcohol in his room Tuesday evening. He has further provided evidence establishing he was suffering from acute dehydration two days after he failed to appear for his Wednesday shift. Thus, taking the evidence in the light most favorable to Plaintiff, the Court finds questions of material fact exist as to whether he was qualified for his position.

-8-

Further, without access to General Acid's relevant documents, it would be unjust for this Court to find as a matter of law that Plaintiff cannot demonstrate he was treated less favorably than similarly situated individuals. In fact, the meager record before this Court suggests that Plaintiff can establish disparate treatment. Plaintiff testified that he and two other General Acid employees tested positive for marijuana, yet Plaintiff was the only employee who was punished. Plaintiff was terminated from his employment for thirty days until he passed a drug test, whereas the other two employees, both Caucasian, were permitted to continue working. Further, there is evidence that at least one other employee, Steve Gagnon, was also drinking alcohol and smoking cigarettes in Plaintiff's room. Yet, Plaintiff was terminated from his employment. General Acid did not question Gagnon prior to terminating Plaintiff even though Gagnon could have also been involved in the incident.

Further, the Court rejects General Acid's contention that Plaintiff cannot rebut its legitimate, non-discriminatory reason for Plaintiff's discharge. In this instance, there are genuine issues of material fact concerning whether General Acid's reason for terminating Plaintiff was pretext for discrimination. Here, Wiedyke never questioned Plaintiff about what transpired between April 16, 2012 and April 18, 2012. Rather, he took Crimmins's account of what happened without any further investigation. Wiedyke swiftly placed all the blame on Plaintiff for the alleged disarray of the hotel room. There is evidence that Gagnon may have contributed to state of the room, however Wiedyke never questioned Gagnon, nor was Gagnon disciplined in any way. Further, when Plaintiff returned to pick up his check, Wiedyke acknowledged that there could be some medical reason for what had happened to Plaintiff, but refused to consider this information prior to terminating Plaintiff. If Wiedyke had conducted a reasonable inquiry, he would have discovered that Plaintiff went to the hospital immediately upon his return from Hawaii and was diagnosed with acute dehydration and

-9-

a swollen jaw.  Further, if Wiedyke had spoken with Mavron, he would have learned that Plaintiff was noticeably not feeling well during the second part of his shift on April 17, 2012, requiring Mavron to pull him off of a task and put him on cleanup detail.

While an employer's decisional process need not leave every stone unturned, the employer must make "a reasonably informed and considered decision before taking an adverse employment action."  *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998).  Courts may not "blindly assume that an employer's description of its reasons is honest.  When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held."  *Id*. at 807-08.  Therefore, questions of fact remain as to whether General Acid had a legitimate, non-discriminatory reason for terminating Plaintiff.

General Acid is not entitled to summary judgment on Plaintiff's § 1981 claim.


### 3.    Negligence

As to Plaintiff's negligence claim, General Acid argues that it had no duty or obligation to Plaintiff while he was not working and while he was staying at Prince Resorts.  General Acid further argues that even if a duty exists, it acted reasonably by checking on Plaintiff numerous times, providing him transportation to the airport and offering to take him to the hospital.  Plaintiff responds, without citing any authority, that General Acid and Ball Corporation had a duty to rescue Plaintiff.

-10-

Assuming Hawaii law applies,[2] Plaintiff must establish the following to recover on his negligence claim: (1) a duty, or obligation, recognized by law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks, (2) a failure on the defendant's party to conform to the standard required, (3) a reasonably close causal connection between the conduct and the resulting injury and (4) actual resulting loss or damage. *Knodle v. Waikiki Gateway Hotel*, 69 Haw. 376, 384-85; 742 P.2d 377 (1987). "Whether the defendant had a duty to take reasonable action to protect the plaintiff from unreasonable risk of harm is, of course, a question for the judge." *Id*. at 387. General Acid's contention that it owed no duty to Plaintiff is without merit; it is well settled that an employer has a duty to exercise reasonable care for the safety of employees. *See Hawath v. State*, 60 Haw. 557, 560; 592 P.2d 820, 823 (1979).

> A master is subject to a duty that care be used either to provide working conditions which are reasonably safe for his servants and subservants, considering the nature of the employment, or to warn them of risks of unsafe conditions which he should realize they may not discover by the exercise of due care.

*Id*. (citing Restatement (Second) of Agency § 492 (1958)).

Here, General Acid was aware of the dangers associated with the Hawaii assignment, as well as Plaintiff's previous history of dehydration while working under such conditions. Plaintiff was staying in the hotel in Hawaii for the benefit of General Acid and its job assignment in Hawaii. While Crimmins and Mrs. Mavron may have believed that Plaintiff was merely intoxicated, neither took any action to confirm this was the case despite Plaintiff's unusual behavior. Further, the foreman knew that Plaintiff was feeling ill the previous day, and knew that Plaintiff had not shown

---

[2] "A federal district court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules." *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). General Acid argues that Hawaii law applies to Plaintiff's negligence claim and Plaintiff does not dispute that Michigan choice of law rules dictate the application of Hawaii law to Plaintiff's negligence claim.

up for his scheduled shift, but apparently did nothing to advise Crimmins of this fact.

Lastly, whether General Acid's actions or omissions rose to the level of a breach of duty to Plaintiff is a question for the jury. *See Wagatsuma v. Patch*, 10 Haw. App. 547, 574; 879 P.2d 572 (1994). Based on the foregoing, genuine issues of material fact exist concerning Plaintiff's negligence claim against General Acid.

However, the Court finds that Plaintiff cannot establish his negligence claim against Ball Corporation. The record demonstrates that Ball Corporation owed no duty to Plaintiff. Plaintiff testified at his deposition that all of his instructions came from General Acid employees, specifically Mavron and Crimmins. Additionally, Crimmins testified that Ball Corporation's representatives had no role in directing or supervising General Acid's employees. Accordingly, Ball Corporation is entitled to summary judgment in its favor.

### B. Prince Resorts's Motion to Dismiss for Lack of Personal Jurisdiction

Prince Resorts seeks dismissal of Plaintiff's negligence claim pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because Prince Resorts lacks sufficient minimum contacts with the State of Michigan to support this Court's exercise of limited personal jurisdiction.[3] The Court agrees with Prince Resorts.

"A federal court's exercise of personal jurisdiction . . . must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F. 3d 883, 888 (6th Cir. 2002).

---

[3] There is no dispute that there is no general personal jurisdiction, therefore the Court need only determine whether it has limited personal jurisdiction over Prince Resorts. *See* MICH. COMP. LAWS § 600.711 (a corporation is subject to general jurisdiction in Michigan if (1) it is incorporated under Michigan law, or (2) consents to be sued in Michigan, or (3) carries on a continuous and systematic part of its general business within Michigan.

Plaintiff has the burden of establishing that this court has personal jurisdiction over General Acid. *Id*. at 887. The Michigan long arm statute permits limited personal jurisdiction over an individual when the cause of action arises out of the "transaction of any business within the state[.]" MICH. COMP. LAWS § 600.705(1); *see also Kelly Servs., Inc. v. Noretto*, 495 F. Supp.2d 645 (E.D. Mich. 2007). In *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988), the court held that where a defendant does even the "slightest act of business in Michigan," the first statutory criterion for personal jurisdiction under Michigan's long arm statute is satisfied. *Id.* In Michigan, the "long arm" statute extends "'limited' jurisdiction over nonresident corporations . . . for claims arising from the defendant's activities that were either within Michigan or had an in-state effect." *Id.; see also* MICH. COMP. LAWS § 600.715.

If it is determined that Prince Resorts can be subjected to this court's limited personal jurisdiction under Michigan's long arm statute, the Court must then determine whether the exercise of limited personal jurisdiction over Prince Resorts satisfies the Due Process Clause. The Court must use the following test to make this determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F. 3d at 890. "Purposeful availment . . . is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. . . ." *Id*. at 889. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Additionally, "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.*

-13-

As an initial matter, Plaintiff's assertion that Prince Resorts is a national hotel chain is inaccurate, rather Prince Resorts holds an interest in three properties–all of which are located in Hawaii. Furthermore, even if this Court were to conclude that Michigan's long arm statute permitted this Court to exercise limited personal jurisdiction over Prince Resorts because the action arises out of the "transaction of any business within the state," exercise of personal jurisdiction nonetheless fails to comport with the requirements of the Fourteenth Amendment's Due Process Clause.

Prince Resorts is located in Honolulu, Hawaii. The hotel is owned and operated by Hawaii Prince Hotel Waikiki LLC, a limited liability company organized under the laws of the State of Hawaii. Further, Prince Resorts owns no property and does not operate any business in the State of Michigan. Nor does Prince Resorts advertise in any Michigan based newspapers, periodicals, or on any Michigan based television or radio stations. Prince Resorts's conduct and connection with the State of Michigan are not such that it should reasonably have anticipated being haled into court in this state. The only contact between Prince Resorts and this state is the unilateral act of General Acid contacting Prince Resorts to reserve rooms at the hotel for its employees.

Plaintiff's assertion that Prince Resorts advertises on the internet is insufficient, standing alone, to satisfy due process. As the Sixth Circuit Court of Appeals explained in *Neogen Corp.*, *supra*, "[a]n internet website by its very nature can be accessed internationally. By maintaining a website [in its home state], [the defendant] is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an attenuated contact that falls short of purposeful availment." *Neogen Corp.*, 282 F.3d at 890.

Further, in order to satisfy due process, this action must arise from Prince Resorts's contacts with the State of Michigan. The Sixth Circuit Court of Appeals has described this prong as requiring

-14-

consideration of "whether the causes of action were made possible by or lie in the wake of, the defendant's contacts with the forum state." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544, 553 (6th Cir. 2007) (internal citations and quotations omitted); *see also Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.").

The facts giving rise to Plaintiff's negligence claim against Prince Resorts do not arise from Prince Resorts's contacts with this state. The alleged negligence occurred in Hawaii. Plaintiff's negligence claim did not arise from any marketing efforts in Michigan. Plaintiff did not reserve his room using Prince Resorts's website. *See Bell v. Imperial Palace Hotel/Casino, Inc*., 200 F. Supp. 2d 1082, 1088 (E.D. Mo. 2001) (declining to exercise jurisdiction where the mere existence of the defendant's website had no connection with the plaintiffs' claim arising from an incident occurring while the defendant was providing services to the plaintiffs outside of the forum state); *see also Croyle v. Hutchinson*, No. 11-1141, 2012 U.S. Dist. LEXIS 85328, *9-10 (W.D. Pa. June 20, 2012) (concluding that the mere fact that the plaintiffs used the defendants' website to make reservations at the defendants' out-of-state resort was insufficient to confer jurisdiction since the plaintiffs' claims were unrelated to any activity the defendants conducted in the forum state). Thus, Plaintiff's negligence claim did not arise from Prince Resorts's activities in Michigan.

Lastly, the third prong requires a demonstration that "the acts of the defendant or consequences caused by the defendant [] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The rationale for this requirement is that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the

-15-

reasonableness of jurisdiction even if the defendant purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477-78. Here, exercise of limited personal jurisdiction over Prince Resorts would be unreasonable. There is a sole unilateral contact from General Acid to Prince Resorts to reserve hotel rooms, the alleged negligent conduct occurred in Hawaii, and Prince Resorts neither owns or operates any business in this state, nor does it engage in any marketing activities specifically targeting Michigan residents. Therefore, the Court grants Prince Resorts's Motion to Dismiss based on the absence of personal jurisdiction over this Defendant.

## IV.    CONCLUSION

For the foregoing reasons, General Acid's and Ball Corporation's Motion for Summary Judgment [#20] is GRANTED IN PART and DENIED IN PART. Ball Corporation is dismissed from this cause of action with prejudice.

General Acid's Motion for Sanctions [#27] is DENIED.

Prince Resorts's Motion to Dismiss for Lack of Personal Jurisdiction [#22] is GRANTED. Prince Resorts is dismissed from this cause of action without prejudice.

SO ORDERED.

Dated: April 15, 2013                                             /s/Gershwin A Drain
                                                                            GERSHWIN A. DRAIN
                                                                            UNITED STATES DISTRICT JUDGE

-16-